(August 10, 1905.)

## SHOSHONE COUNTY v. ROLLINS.

[82 Pac. 105.]

BOARD OF COUNTY COMMISSIONERS—SPECIAL MEETING—BONDS—ERECTING COURTHOUSE AND JAIL.

1. Under the provisions of section 1757 of the Revised Statutes, providing for special meetings of the board of county commissioners, and requiring that the order therefor must specify the business to be transacted at such special meeting where an order was made calling a special meeting "for the purpose of raising funds to purchase a site for a new courthouse and erecting a courthouse in said county," such notice is sufficient to authorize the board to submit the question to the electors of the county whether bonds should be issued "for the purpose of purchasing a site, erecting a courthouse and jail and furnishing the same," where it is shown

that the jail is to be a room in the courthouse or that the courthouse and jail constitute one building.

2. *Held,* that the bonds issued in pursuance of such proceedings and election were valid.

(Syllabus by the court.)

APPEAL from the District Court of Shoshone County. Honorable R. T. Morgan, Judge.

Action to determine the validity of the issue of certain county bonds. Judgment for plaintiff. Affirmed.

James E. Gyde, Prosecuting Attorney, for Respondent.

John H. Wourms, for Appellant.

No briefs filed.

SULLIVAN, J.—This case involves the validity of certain bonds issued by the board of county commissioners of Shoshone county, for the purpose of purchasing a site and constructing a courthouse and jail, and furnishing the same for the said county. It was presented to the court below on an agreed stipulation of facts. It appeared from such facts that on the twenty-fifth day of February, 1905, Ewen McIntosh and Israel B. Cowen, who were each a duly elected, qualified and acting county commissioner in and for said county, called a special meeting of said board of county commissioners to be held at the city of Wallace, in said county, on the eighth day of March, 1905, at 2 o'clock in the afternoon of that day. Said meeting was called for the following purpose, among others, to wit: "To take such action as the said board shall deem advisable and for the best interests of the said county toward submitting to the qualified electors of the said county the question whether the said board of county commissioners be authorized to bond the said county for the purpose of raising funds to purchase a site for a new courthouse and erecting a courthouse in said county, including the appointment of appraisers to appraise any piece of property which may be deemed a desirable site for such courthouse, and do everything requisite and necessary to be done by the said board to further

the project to bond the said county and erecting a new court-house for said county upon some suitable site in the city of Wallace, said county, as fully as the said board could do at any regular meeting thereof.''

Said meeting was called under the provisions of section 1757 of the Revised Statutes, which is as follows: ''If at any time after the adjournment of a regular meeting the business of the county requires a meeting of the board, a special meeting may be ordered by a majority of the board. The order must be entered of record, and five days' notice thereof must, by the clerk, be given to each member not joining in the order. The order must specify the business to be transacted, and none other than that specified must be transacted at such special meeting.'' It is stipulated that the clerk of said board gave Fremont S. Rowe, the other member of said board who had not joined in said order, more than five days' notice of said meeting, and also gave more than five days' public notice of said meeting, stating the business to be transacted thereat as set forth in said order by notices thereof posted in three conspicuous places in said county, one of which notices was posted at the courthouse door of said county; that at the time and place specified in said order and notice, all members of said board met in special session, and at said meeting a resolution was passed reciting certain facts, and providing for a special election to be held in the said county at which should be submitted to the qualified electors of said county the question whether the board of county commissioners should be authorized to issue negotiable coupon bonds of said county to the amount of $75,000, ''for the purpose of defraying the necessary expense of purchasing such suitable site for a courthouse and county jail and erecting thereon a suitable county courthouse; county jail and furnishing the same for said county.'' It further appears that at said election so held there were cast fourteen hundred and forty votes in favor of issuing said bonds and three hundred and forty-seven against it; that said votes were duly canvassed, as required by law, and the result of such election declared; that thereafter, on the fourteenth day of April, 1905, said board,

at a regular session, all members being present, unanimously directed that said county issue the bonds above mentioned ''for the purpose of defraying the necessary expense of purchasing a suitable site in the city of Wallace for a courthouse and county jail, and erecting thereon a courthouse and county jail and furnishing the same for said county''; that the law was fully complied with in all said matters; that thereafter due and legal notice for the sale of said bonds was made and certain bids were received for said bonds, and that the bid of the appellant in this action being the highest and best bid, was accepted by said board, and that said bonds were duly issued by said board and signed by the chairman and attested by the clerk thereof under the seal of said board and countersigned by the county treasurer, and pursuant to the directions of said appellant, said bonds were deposited in the First National Bank of Chicago, Illinois, to be delivered to the appellant upon its paying said bank for said county the purchase price thereof; that said defendant refused, and still refuses and neglects, to pay to the plaintiff or to the said bank the said purchase price thereof, and stated as a reason for such refusal that there was a question whether the board of county commissioners of said county, sitting at a special meeting of said board, had jurisdiction at said meeting to submit to the qualified electors of the county the question of issuing the negotiable bonds of said county ''for the purpose of defraying the necessary expense of purchasing a site for a county courthouse and county jail, and erecting thereon a suitable courthouse and county jail and furnishing the same for said county, when the order of said commissioners, McIntosh and Cowen, made and entered on the twenty-fifth day of February, 1905, calling said special meeting, stated that said meeting was called for the purpose of raising funds to purchase a site for a new courthouse and erecting a courthouse in said county,'' and did not specify therein the erection of a jail and furnishing the courthouse and jail.

It is stipulated that the board of county commissioners had adopted plans and specifications for the erection of said county courthouse and jail and let the contract for the construction

thereof, and that said county courthouse and jail consisted of but one building covered by one roof; that the jail was a room in said courthouse. Upon the stipulated facts the trial court held that the said board had authority under the call for said special meeting to submit to the electors the issuance of said bonds. The appeal is from the judgment.

The question involved in this case is whether under said notice for a special meeting which contained the following: "Whether the said board of county commissioners be authorized to bond the said county for the purpose of raising funds to purchase a site for a new courthouse and erecting a courthouse in said county," the board had authority to submit to the voters of the county the question whether the commissioners be authorized to issue bonds "for the purpose of defraying the necessary expense of purchasing a suitable site for a courthouse and county jail, and erecting thereon a suitable courthouse and county jail and furnishing the same for said county." It will be observed that the notice for the special meeting refers to the purchase of a site and the erection of a courthouse thereon, and does not mention the erection of a jail and the furnishing of the courthouse and jail, and the question is directly presented whether the board had authority under the notice to submit to the voters of the county the question whether bonds should be issued, not only for the purpose of purchasing a site and erecting a courthouse, but for erecting a jail and furnishing the same. It appears from the record that all of the members of said board were present at said special meeting and unanimously resolved to submit the question to the people whether bonds should be issued "for the purpose of purchasing a site, erecting a courthouse and jail and furnishing the same." Upon the foregoing statement of facts and the provisions of said section 1757, Revised Statutes above quoted, it is clear to us that the board had authority to submit the proposition of the issuance of said bonds to the people as it was submitted to them. The jail is to be made a part of the courthouse; it is to be a part of the courthouse and a room in the same building, and it would be most technical to hold that if the board in its submission of the

question to the electors of said county had submitted the question to the electors whether a courthouse, grand jury room and county offices should be erected, tha' they were not authorized to issue bonds for that purpose when the notice of the special meeting simply specified a courthouse, when all of the aforesaid rooms were to bo contained *in* said courthouse.

We therefore hold that the proceedings of said board were regular and valid, and the judgment of the trial court must be affirmed, and it is so ordered.

Stockslager, C. J., and Ailshie, J., concur.